1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   MEGAN RENE HOWARD, et al.,      )   CASE No. CV 04-1434-ODW (PJW)
                                     )
11                  Plaintiffs,      )   REPORT AND RECOMMENDATION OF
                                     )   UNITED STATES MAGISTRATE JUDGE
12            v.                     )   RE: DEFENDANTS' MOTION FOR
                                     )   SUMMARY JUDGMENT
13   MELVIN HUNTER, et al.,          )
                                     )
14                  Defendants.      )
     _____)

15

16        This Report and Recommendation is submitted to the Honorable Otis

17   D. Wright, II, United States District Judge, pursuant to 28 U.S.C.

18   § 636 and General Order 05-07 of the United States District Court for

19   the Central District of California.  For the reasons discussed below,

20   it is recommended that Defendants' summary judgment motion be granted

21   in part and denied in part.

22                                  I.

23                 SUMMARY OF FACTS AND PROCEEDINGS

24        Plaintiff Jerry Howard is civilly committed for care and

25   treatment under California's Sexually Violent Predators Act ("SVPA").

26   *See* Cal. Welf. & Inst. Code §§ 6600-6609.3.  He brings this action

27   against various employees of Atascadero State Hospital ("ASH") who

28   were in some way responsible for his care and treatment while he was

at ASH.  Initially, Plaintiff was authorized to visit with his then-nine-year-old daughter when he was placed at ASH in 2000.  In May 2003, Defendants changed the rules governing visitations by revising Administrative Directive ("AD") 713, entitled "Visiting Regulations." (*See* Defendants' Nov. 2005 Opp'n to Pl.'s Mot. Summ. J., Ex. A at ¶ 6; Ex. B.)  The revised directive prohibited Plaintiff from visiting with his daughter because she was of the same age and sex as his victims. (AD 713.)  Subsequently, Plaintiff was denied a visit with his daughter.  He then filed this *pro se* civil rights suit against Defendants, alleging that they violated his federal constitutional right to the companionship of his daughter when they prevented him from visiting with her at ASH.[1]

In June 2007, Plaintiff was transferred from ASH to Coalinga State Hospital ("CSH").  CSH does not follow the dictates of AD 713. Consequently, Plaintiff has been authorized to visit with his daughter since being moved to CSH.[2]

---

[1]  Plaintiff brought this action on behalf of himself and his daughter.  However, Plaintiff is not a lawyer and, therefore, cannot represent his daughter.  *See Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) (holding parent cannot represent minor child in federal court, but must retain attorney to do so).  On several occasions, the Court has informed Plaintiff that he cannot pursue his daughter's claim on her behalf.  Because the daughter has failed to retain counsel, her suit is dismissed.

[2]  The information regarding Plaintiff's current location and the visitation policy there was provided to the Court by the parties during oral argument on the motion.

2

II.

ANALYSIS

On July 15, 2008, Defendants filed a Motion for Summary Judgment ("Motion").  In their Motion, Defendants argue that they are entitled to judgment at this stage because: 1) Plaintiff's claims are without merit as a matter of law; 2) Plaintiff's injunctive claims are moot; and 3) Defendants are entitled to qualified immunity.  Plaintiff opposes the Motion.  For the reasons set forth below, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's claims for injunctive relief.  The Court finds, however, that they are not entitled to summary judgment on Plaintiff's other claims.

A.   Standard of Review

Under Federal Rule of Civil Procedure 56(c), the moving party is entitled to judgment as a matter of law, where there is no genuine issue as to any material fact.  *See* Fed. R. Civ. P. 56(c).  A "genuine issue" exists if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a summary judgment motion, the moving party is tasked with submitting evidence that establishes there is no genuine material factual dispute, and, therefore, the party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that "[o]f course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

1  demonstrate the absence of a genuine issue of material fact"). A

2  factual dispute is "material" if it might affect the outcome of the

3  suit under governing law. *See Anderson*, 477 U.S. at 248. A court

4  views the inferences it draws from the underlying facts in a light

5  most favorable to the non-moving party. *See Matsushita Electric*

6  *Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

7      In resolving a summary judgment motion filed against a *pro se*

8  plaintiff, the Court considers all verified pleadings. *See Jones v.*

9  *Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (holding that where the

10  plaintiff is *pro se*, a court "must consider as evidence in [ ]

11  opposition to summary judgment[,] all of [the plaintiff's] contentions

12  offered in motions and pleadings, [that] are based on personal

13  knowledge and set forth facts . . . admissible in evidence, and where

14  [plaintiff] attested under penalty of perjury that the contents of the

15  motions or pleadings are true and correct"); *see also Lopez v. Smith*,

16  203 F.3d 1122, 1132 n.14 (9th Cir. 2000)(en banc) (concluding that

17  "[a] plaintiff's verified complaint may be considered as an affidavit

18  in opposition to summary judgment if it is based on personal knowledge

19  and sets forth specific facts admissible in evidence").

20  B.   <u>Defendants Have Failed to Establish Entitlement to Summary</u>

21       <u>Judgment on Plaintiff's Substantive Federal Claims</u>

22      Defendants assert that they are entitled to summary judgment

23  because their decision to deny Plaintiff the right to visit with his

24  daughter on medical grounds did not violate his constitutional rights.

25  In effect, Defendants contend that their medical decision to cease

26  Plaintiff's familial visitation is not subject to judicial review.

27  Plaintiff disputes that the denial of visits with his daughter was a

28  medical decision. He argues that, even it was, the decision

4

1  interfered with his fundamental constitutional right to the

2  companionship of his daughter.   Plaintiff maintains that Defendants

3  have not offered a compelling reason that outweighs his right to his

4  daughter's companionship.   The Court concludes that Defendants failed

5  to establish their interference with Plaintiff's constitutional right

6  to the companionship of his daughter was either necessary to serve an

7  important government interest or narrowly tailored to accomplish that

8  goal.   For these reasons, a grant of summary judgment is unwarranted.

9       A father has a constitutional right to the companionship, care,

10  custody, and management of his daughter. *Stanley v. Illinois*, 405

11  U.S. 645, 651 (1972).   The right is a reciprocal one, enjoyed not only

12  by the father but by the daughter, too. *Fiallo v. Bell*, 430 U.S. 787,

13  810 (1977) (Marshall, J., dissenting).   The exact nature of this right

14  has yet to be fully defined by the Supreme Court.   Though the Court

15  has found that certain parental rights are fundamental, it has not yet

16  addressed the nature of the right of companionship. *Compare Troxel v.*

17  *Granville*, 530 U.S. 57, 68 (2000) (noting that a mother has a

18  "fundamental right to make decisions concerning the rearing of her two

19  daughters"), *with Lipscomb By and Through DeFehr v. Simmons*, 962 F.2d

20  1374, 1378 (9th Cir. 1992) (observing that "[a]lthough the Supreme

21  Court has never squarely held that the right to maintain relationships

22  with one's family members is a fundamental right protected by the

23  Constitution, there is substantial authority for the proposition that

24  due process places a limit on the state's ability to interfere with

25  certain extant relationships among family members.").   The Court notes

26  that the Ninth Circuit has not resolved this issue.   In *Lee v. City of*

27  *Los Angeles*, 250 F.3d 668 (9th Cir. 2001) the court explained:

28

It is well established that a parent has a "fundamental liberty interest" in "the companionship and society of his or her child" and that "[t]he state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. §] 1983." *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). "[T]his constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987) *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). Moreover, "the First Amendment protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)); *see also Conti v. City of Fremont*, 919 F.2d 1385, 1388-89 (9th Cir. 1990).

250 F.3d at 685.

Despite the fact that courts have not expressly delineated the nature of the right to companionship, familial association is an important right that is protected under the Constitution. *Stanley,*

6

405 U.S. at 651.   If pressed to quantify this right, the Court would conclude that the right is so important that, in order to justify burdening this right, the State would, at a minimum, have to show that a substantial government interest was at stake and that the State's actions were narrowly tailored to accomplish its goals.   *See Stop H-3 Ass'n v. Dole*, 870 F.2d 1419, 1430 (9th Cir. 1989) (applying intermediate scrutiny where "'concerns sufficiently absolute and enduring can be clearly ascertained from the Constitution and [Supreme Court] cases . . . .'" (quoting *Plyler v. Doe*, 457 U.S. 202, 218 n.16 (1982))).

With this understanding of the magnitude of the constitutional concerns at stake here, the Court turns to Defendants' Motion. Defendants devote only a *single* sentence to support their claim to summary judgment: "In this case, Plaintiff's constitutional rights were never violated because the decision to prevent Plaintiff's minor daughter from visiting Plaintiff was a sound, professional, medical decision."   (Mot. at 6.)   They cite neither facts nor law to support this bare assertion.   The Court finds this argument unpersuasive.   To begin with, Defendants fail to discuss the Constitution, or any of the cases that have interpreted it.   (Mot. at 4-6.)   Further, they do not discuss the nature of the right that they have interfered with or the test that the Court should apply in assessing whether their conduct was constitutional.

Defendants' recitation of the facts is woefully inadequate. Their contention that the decision to deny Plaintiff's familial visitation was a sound, professional medical one is not a fact, it is a conclusion.   Further, Defendants offer no support for their claim that this decision was justified by a medical reason.   In a section of

1  their brief relating to qualified immunity, Defendants do cite two
2  declarations that are attached to their Motion.  These declarations
3  parrot counsel's contention that the decision was a medical one, but,
4  as explained below, these declarations, alone, are inadequate to
5  substantiate this claim.

6        In support of the Motion, filed July 15, 2008, Defendants
7  submit two declarations, signed in November 2005: the Peggy Phaklides
8  Declaration and the Anita Judd Declaration.  Peggy Phaklides is
9  currently the ASH Litigation Coordinator.  Before becoming Litigation
10 Coordinator, Phaklides was a "Utilization Review Coordinator" and
11 registered nurse for 19 years at ASH.  (*See* Mot., Ex. B.)  According
12 to Phaklides, the decision of ASH personnel to refuse visitation of
13 Plaintiff's minor daughter was based on a medical decision that the
14 visitation would be contrary to his mental health treatment plan.  She
15 claims that this is consistent with the normal procedures regarding
16 visitations of minors at ASH.  (*Id.*)

17       The Phaklides Declaration has little, if any, evidentiary value.
18 First, Phaklides does not explain what her position was or what her
19 duties were when AD 713 was amended, or at the time the decision
20 regarding Plaintiff was made.  Presumably, as Litigation Coordinator,
21 Phaklides was neither involved with amending AD 713 nor the treatment
22 team's decision to prohibit Plaintiff from visiting with his daughter.
23 If these actions were taken when she served as the Litigation
24 Coordinator, she is simply reporting what someone told her or what she
25 has read.  Therefore, her statements are hearsay and are inadmissible
26 for the purposes of this Motion.  *See Blair Foods, Inc. v. Ranchers*
27 *Cotton Oil,* 610 F.2d 665, 667 (9th Cir. 1980) (noting hearsay
28 contained in declarations "is inadmissible and may not be considered

1   by [a] court on review of a summary judgment"); *see also* Fed. R. Civ.

2   P. 56(e) (stating that "[a] supporting or opposing affidavit must be

3   made on personal knowledge, set out facts that would be admissible in

4   evidence, and show that the affiant is competent to testify on the

5   matter stated"). Assuming that the decision was made when Phaklides

6   was a Utilization Review Coordinator, the Court is still not inclined

7   to rely on Phaklides' Declaration. The Court does not know what

8   functions or duties a "Utilization Review Coordinator" performs and

9   Phaklides has offered no explanation. Thus, there is no evidence

10  before this Court that Phaklides had any role in the decisions

11  challenged in this case when she was a Utilization Review Coordinator.

12  Finally, even assuming that the decision was made when Phaklides was a

13  nurse, her Declaration remains merely hearsay. Phaklides fails to

14  state that she was responsible for implementing AD 713, or that she

15  was on Plaintiff's treatment team when he was denied the visit.

16      Even assuming that the Declaration was not based on hearsay, it

17  is not enough to convince this Court that summary judgment is

18  warranted. Phaklides does not say why the new policy was implemented

19  and why the treatment team concluded that Plaintiff could not visit

20  his daughter. The conclusory statement that it was a medical decision

21  does not shed any light on the issue. Further, the decision to deny

22  the visits is contradicted by both ASH's prior policy and CSH's

23  current policy.

24      Anita Judd, ASH Program Director, submitted a declaration as

25  well. (*See* Mot., Ex. A.) Judd oversaw the care and treatment of SVPs

26  at ASH between May 1998 and November 2005. (*Id.* at ¶ 2.) She states

27  that the visit was denied because, "the age and sex of his daughter

28  [were] consistent with his victim profile. . . ." (*Id.* at ¶ 6.) Judd

9

adds that, at the time of the denial, the Lake County Sheriff's Office had reported to ASH that Plaintiff had suggested in a letter to his older (but still minor) daughter that she start up an internet sex business.  (*Id*. at ¶ 7.)  Judd maintains that "the treatment team" denied the visit for two reasons: 1)Plaintiff's daughter was of the same age and sex as his victims; and 2) Plaintiff had sent the letter to his other daughter suggesting that she start up a sex business. (*Id*. at ¶ 7.)

    The Court finds the Judd Declaration no more persuasive than the Phaklides Declaration.  Though Judd was responsible for overseeing the daily care and treatment of the SVPs at ASH, she does not claim that she had anything to do with amending AD 713.  (*Id*. at ¶¶ 4-5.)  In fact, her statements regarding AD 713 seem to contradict other statements by Phaklides and counsel as to why AD 713 was implemented in the first place.  (*Id*. at ¶¶ 3-5.)  For example, Judd points out that the safety and security of the patients, staff, and visitors is one of their "primary missions."  (*Id*. at ¶ 3.)  She asserts that the purpose behind amending AD 713 was to further "ASH's mission [to] protect[ ] the public, and to insure a milieu in which effective treatment may occur . . . ."  (*Id*. at ¶ 5.)

    Judd also does not claim that she was on the treatment team that denied Plaintiff's request to visit with his daughter or that she was in the meeting when the treatment team decided that Plaintiff could not see his daughter.  (*Id*. at ¶ 6.)  Therefore, her statements regarding what took place during the treatment team meeting are inadmissible hearsay.

    The Court concludes that contrary to Defendants' claims, there are genuine issues of material fact barring summary judgment.  It is

10

not clear why Plaintiff was denied his constitutional right to the companionship of his daughter.  Though Defendants maintain that it was a sound, professional medical decision, they fail to explain the basis of this claim.  The Court cannot simply accept their unsupported conclusion and dismiss the case.  *See Way v. County of Ventura*, 445 F.3d 1157, 1161-63 (9th Cir. 2006) (rejecting county's bare allegation that "security concerns" justified blanket policy of strip searching and body cavity checking everyone arrested on charges of being under the influence of drugs).  In addition, Defendants' claim is belied by the fact that the decision to deny Plaintiff a visit with his daughter was based, at least in part, on a blanket policy at ASH preventing all SVPs from visiting with their minor children of the same age and sex as their victims.  As such, the Court cannot conclude that this approach is narrowly tailored to serve a substantial government interest.  *See, e.g., Stop H-3 Ass'n*, 870 F.2d at 1430.  The Defendants' assertion is also contradicted by the fact that the policy at ASH before AD 713 was amended and the policy at CSH after AD 713 was amended allowed Plaintiff to visit with his daughter.  For these reasons, it is recommended that Defendants' summary judgment motion on this ground be denied.

       C.   <u>Defendants Have Established That Plaintiff's Claims For Injunctive Relief Are Moot, And, Should Be Dismissed</u>

In his prayer for relief, Plaintiff requests that the Court order unlimited and unrestricted visitation privileges between Plaintiff and his daughter.  (Compl. at 16.)  He further requests that ASH be required to eliminate "victim profiling," meaning, it appears, that ASH not be allowed to prohibit visitation based on a comparison of the victim's and visitor's profiles.  (*Id.*)  Finally, Plaintiff requests

1    that the Court require Defendants to apologize to both Plaintiff and
2    his daughter for interfering with their visits.  (*Id.*)

3         Defendants seek summary judgment on the issue of injunctive
4    relief, pointing out that Plaintiff has been moved from ASH, which was
5    only intended to be a temporary facility for SVPs, and has been
6    permanently placed at CSH.  (Mot. at 8.)  CSH does not have a policy
7    preventing Plaintiff from visiting with his daughter.  Nor, according
8    to Defendants, is it possible that Plaintiff will be returned to ASH.
9    (*Id.* at 7-8.)

10        The general rule is that when an inmate is transferred to a new
11   prison during the pendency of a civil action in which he  seeks
12   injunctive relief regarding conditions at the old prison the
13   injunctive claims are subject to dismissal because they are moot.
14   *See, e.g., Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995).  It
15   appears that this general rule applies to this case.  Were this Court
16   to order that Defendants, employees at ASH, were required to permit
17   Plaintiff to visit with his daughter, such an order would have no
18   effect--legal, practical, or otherwise.  Defendants do not have
19   custody of Plaintiff any longer.  They cannot permit (or deny) visits
20   with his daughter.  Further, Plaintiff and Defendants have agreed that
21   Plaintiff is allowed to visit with his daughter at CSH.  Thus,
22   Plaintiff's claims for injunctive relief are moot and should be
23   dismissed.[3]

24
25
26
_____

27        [3]  As to Plaintiff's request that the Court order Defendants to
     apologize, the Court is not aware of any authority that allows it to
28   do so.  Thus, this claim, too, is dismissed at this stage.

1        D.   <u>Defendants Are Not Entitled To Qualified Immunity</u>

2        Finally, Defendants argue that they are entitled to qualified

3 immunity.  They assert that they did not violate a clearly established

4 constitutional right by preventing Plaintiff from visiting with his

5 daughter.  (Mot. at 8-13.)  Defendants contend that, even if they did,

6 they reasonably believed that their conduct was lawful.  *Id.*  As set

7 forth below, the record is too undeveloped at this time for the Court

8 to conclude that Defendants are entitled to qualified immunity.

9        Qualified immunity protects government workers from liability for

10 certain actions taken in their capacities as government workers.

11 *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  In analyzing whether

12 qualified immunity applies, a court looks at two things: 1) whether,

13 interpreting the facts in a light most favorable to the plaintiff, the

14 defendant's conduct violated a constitutional right; and 2) whether

15 the right was clearly established, i.e., whether the defendant

16 reasonably, though mistakenly, believed that his conduct was lawful.

17 *Id.* at 201-02.

18        As explained above, Plaintiff had a constitutional right to the

19 companionship of his daughter.  *See Stanley,* 405 U.S. at 651.  By

20 preventing Plaintiff from visiting with his daughter for a four-year

21 period, Defendants interfered with this right.  Thus, the Court

22 answers the first question in the affirmative.  Moving to the second

23 question--whether the right was clearly established--the Court

24 concludes that it was.  The Supreme Court decided *Stanley* 36 years

25 ago.  If the passage of 36 years is not enough to firmly weave the

26 right of companionship into the fabric of society, the fact that

27 numerous lower federal courts (and state courts) have reaffirmed this

28 right in the interim certainly is.  *See, e.g., Lee,* 250 F.3d at 685

(explaining that "[i]t is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that '[t]he state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. §] 1983.'  *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).") (alteration in original).

Defendants argue that the right should be interpreted narrowly, i.e., whether the "right to companionship of a child trumps a maximum security hospital's policy regarding a minor's visitation[, e]special-ly when that policy is in place for the mental health treatment of the patient." (Mot. at 11.)  The Court is not inclined to narrow the focus.[4]  In *Phillips v. Hust*, 477 F.3d 1070 (9th Cir. 2007), the Ninth Circuit addressed a similar request by a prison librarian who was sued by a prisoner after she denied the prisoner access to a "comb-binder." 477 F.3d at 1079-80.  The plaintiff needed to comb-bind his brief for filing in the Supreme Court, which required that all briefs be comb-bound.  *Id.*  The defendant argued that, for the law to be clearly established, some court would have had to have held that prison staff were required to allow a prisoner access to a comb-binder.  *Id.* at 1079-80.  The Ninth Circuit rejected that argument.  *Id.* at 1080.  The

---

[4]   The Court notes that, in the prison-context, deprivation of family visits is imposed "*only* upon those with serious prison-behavior problems."  *See Beard v. Banks*, 548 U.S. 521, 533 (2006) (emphasis added).  Given that the treatment of "prisoners set[s] a floor" for that afforded to SVPs, and that "civilly detained persons must be afforded 'more considerate [ ] conditions of confinement than criminals[,]'" the Court is further disinclined to limit the familial association rights in Plaintiff's case.  *See Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir. 2007) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982).

*Phillips* court held that the law that prisons could not deny a prisoner access to the courts was clearly established at the time the defendant arbitrarily denied the plaintiff access to the comb-binder, and the denial effectively barred his access to the courts. *Id.* The court held that there was no requirement that a court have previously ruled on anything as specific as the comb-binder in order for the law to be clearly established. *Id.* In reaching this result, the court noted that the librarian had routinely allowed the plaintiff to use the comb-binder before and after she arbitrarily denied his request in the case before the court. *Id.* at 1077-78.

The Court is confronted with a similar situation here. Though no court has specifically held that states cannot bar SVPs from visiting with their children, many courts, including the United States Supreme Court, have held that a father has a constitutional right to the companionship of his daughter. No court has ever said that this right does not apply to persons who have been civilly committed (at least where there is no threat to the child). The Court also notes that, like in *Hust*, Plaintiff was not barred from visiting with his daughter before the new policy was put in place and is not barred from visiting with her now. All this suggests that the issue should not be narrowly focused in this case.

Finally, Defendants argue that, even if they violated a clearly established constitutional right, their conduct was objectively reasonable and, therefore, they are entitled to qualified immunity. (Mot. at 11-13.) Again, the Court disagrees.

Defendants' Motion raises more questions than answers regarding the change in policy at ASH, restricting Plaintiff and other SVPs from visits with their children. It is hard for this Court to conclude

15

that a reasonable person in Defendants' shoes would have categorically denied SVPs their right to visit with their children, particularly in light of the fact that visits were allowed before 2003 and after (at CSH).  For the Court to find that Defendants' actions were objectively reasonable, the Court would have to conclude that their actions prior to 2003 were unreasonable as are the actions of the CSH staff today.  This, the Court is not willing to do.  But the most compelling reason why the Court cannot conclude that Defendants' actions were objectively reasonable is because Defendants have not established why they acted in the manner that they did.  Other than a general, conclusory statement that prohibiting Plaintiff from seeing his daughter was a medical decision, Defendants have not attempted to explain why that was so.  Absent such explanation, qualified immunity is unavailable.

III.

RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the Court issue an Order (1) approving and adopting this Report and Recommendation and (2) directing that Defendants' Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part.

DATED:     October   10  , 2008.


_Patrick J. Walsh_

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Civil Rights\HOWARD, 1434\R&R.Ds.SJ.wpd

16